# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDMUND GILCHRIST, : | |
| : | |
| Petitioner : | |
| : | CIVIL NO. 3:CV-11-1502 |
| v. : | |
| : | (Judge Caputo) |
| DAVID J. EBBERT, : | |
| : | |
| Respondents : | |

# M E M O R A N D U M

## I. Introduction

Petitioner Edmund Gilchrist filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on August 12, 2011, seeking an order compelling respondent to consider his request for pre-release custody placement in a residential re-entry center (RRC)[1] in accordance with the Second Chance Act of 2007 (SCA) for a period greater than the last six months of his sentence. (Doc. 1, Pet. at p. 10.) For the reasons that follow, the Petition will be dismissed as it is now moot as he is presently housed in a Philadelphia RRC.[2]

---

[1] Prior to March 31, 2006, RRC's were referred to as Community Corrections Centers (CCC). They are commonly known as halfway houses. Doc. 10, Response to Pet. For Writ of Habeas Corpus, fn. 1.

[2] The BOP's inmate locator reveals that Mr. Gilchrist is presently housed in a RRC in the Philadelphia area. *See* http://www.bop.gov/iloc2/LocateInmate.jsp.

## II. Background

On August 9, 2000, Mr. Gilchrist was sentenced in the United States District Court for the Eastern District of Pennsylvania to a 180 month term of imprisonment for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. (Doc. 10-1, McKee Decl. at ¶ 3.) His projected release date, via Good Time Conduct, is January 29, 2013. (*Id*.)

Recommendations for RRC placements are ordinarily reviewed under the five factors of 18 U.S.C. § 3621(b) with the inmate and the Unit Team 17 to 19 months before each inmate's probable release date. (Doc. 10-1, McKee Decl. at ¶ 4 and Doc. 10-1 at p. 9.) An inmate's institutional programming is also reviewed to determine whether additional RRC time is warranted. (Doc. 10-1, McKee Decl. at ¶ 8.) All inmates are statutorily eligible for up to 12 months pre-release RRC placement. (Doc. 10-1 at p. 8.) While all inmates are statutorily eligible for up to 12 months pre-release RRC placement, not all inmates are appropriate for RRC placement and for those who are appropriate, the length of the RRC placement must be determined on an individual basis. (Doc. 10-1 at pp. 66-67.)

Mr. Gilchrist arrived at FCI Allenwood on February 7, 2011. (*Id*. at ¶ 3.) On March 9, 2011, Mr. Gilchrist met with his Unit Team for the purpose of evaluating his program and security needs. (Doc. 1, Pet.) At this meeting, Mr. Gilchrist inquired as to the procedure, and when, he would be transferred to a half way house. (*Id*.) He states he was advised that he would not receive more than 6 months in an RRC. (*Id*.) The following day, Mr. Gilchrist submitted an informal administrative remedy

request seeking an individual specialized need assessment. (*Id*. and Doc. 1-1 at ECF p. 2.) On March 17, 2011, Mr. Gilchrist's Unit Team advised him that his eligibility and RCC placement would be reviewed between June and August 2011, and that in accordance with the Second Chance Act of 2007, he would be eligible for 12 months RRC placement. (Doc. 1 at ¶ 15 and Doc. 1-1 at p. 4.) On March 25, 2011, Mr. Gilchrist filed a formal administrative remedy request (No. 633455) requesting a "de novo" specialized needs assessment to ensure his RRC placement is not limited to 6 months as his Case Manager indicated. (Doc. 1-1 at p. 6.) On April 14, 2011, Warden Ebbert responded to the Administrative Remedy advising Mr. Gilchrist that his "Unit Team would review his eligibility and appropriateness for RRC placement between June and August 2011, which will be 17-19 months prior to [his] Projected Release Date of January 29, 2013." (Doc. 1-1 at p. 8.) He was notified that his review for pre-release RRC placement would take place in accordance with the criteria set forth in the Second Chance Act and that he would be eligible for pre-release RRC placement for up to 12 months. (*Id*.) On April 20, 2011, Mr. Gilchrist appealed "the denial of [his] RRC placement" and requested that his RRC placement would not be based solely on his sentence. (Doc. 1-1 at p. 10.) On May 23, 2011, BOP Regional Director Norwood informed Mr. Gilchrist that a number of factors, in addition to his length of sentence, would be considered when he is evaluated for RRC placement. (Doc. 1-1 at p. 12.) Director Norwood "granted" Mr. Gilchrist's request that he would "receive full and appropriate RRC consideration at the proper time," 17-19 months prior to his projected release date. (*Id*.) Mr. Gilchrist was advised that if he was dissatisfied with Director Norwood's response he

could file an appeal to the BOP's General Counsel. (*Id.*) Mr. Gilchrist did not file a further appeal because he "was satisfied with the Regional Director's Response." (Doc. 11, Traverse at p. 4.)

In July 2011, after Mr. Gilchrist's "six month mark at Allenwood," he requested that he "be teamed" and sought to "discuss and resolve issues concerning RRC considerations." (Doc. 1-1 at p. 14.) His request was denied and he was advised his next review would take place in September. (*Id.*)

Although Mr. Gilchrist contends that he did not receive an RRC evaluation, on September 4, 2011, Mr. Gilchrist's Unit Team convened for a Program Review of his institutional programming and pre-release needs as well as his eligibility for RRC placement. (Doc. 10-1 at pp. 46-61 and Doc. 11 at p. 6.) As a result of his Program Review, he was informed that he would be recommended for an RRC placement of 150 to 180 days (i.e. five to six months) based in part on his institutional misconduct history, his institutional programming and "his sentence length and his criminal history."[3] (Doc. 10-1, McKee Decl. at ¶ 10 and pp. 46-47.) Although Mr. Gilchrist's Program Review occurred six days outside of the 17-19 month time frame when RRC placements are ordinarily recommended, there is no evidence showing that he would have received additional RRC time had his review taken place earlier. (Doc. 10-1, McKee Decl. at ¶ 14.) Mr. Gilchrist did not show

---

[3] At the time of his review, the Unit Team noted that Mr. Gilchrist provided them with a release address but not an employment address. (*Id.* at pp. 47.) Petitioner disputes this statement claiming he advised his Unit Team that he no release address but did have an employment address. (Doc. 11 at p. 2.) This dispute is not material to our resolution of the case.

-4-

any extraordinary reason for warranting additional RRC time. (*Id*. at ¶ 13.) Mr. Gilchrist did not appeal his Unit Team's September 2011 RRC determination via the BOP Administrative Remedy program. (Doc. 10-1, Albert Decl. at ¶ 3 and Doc. 11, Traverse at p. 5.)

**III. Discussion**

Article III, § 2 of the United States Constitution provides that federal courts may adjudicate only live cases or controversies. *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 983, 140 L.Ed.2d 43 (1998); *Rendell v. Rumsfeld*, 484 F.3d 236, 240-241 (3d Cir. 2007). The case or controversy requirement demands that the parties continue to have a personal stake in the outcome of a federal lawsuit through all stages of the judicial proceeding. *Spencer*, 523 U.S. at 7, 118 S.Ct. at 983. This means that, throughout the litigation, an actual controversy, possible of redress by a favorable judicial decision, must exist. *United States v. Kissinger*, 309 F.3d 179, 180 (3d Cir. 2002). In the context of a habeas corpus proceeding, the writ "does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 494-95, 93 S.Ct. 1123, 1129, 35 L.Ed.2d 443 (1973).

In the instant case, by virtue of Mr. Gilchrist's placement in a RRC, neither the Respondent nor the Court can provide him with the requested relief, an individualized RRC review. As evidenced by the record before the Court, Mr. Gilchrist was considered for RRC placement, and while it may not have yielded a 12

month RRC placement as he had hoped, he is currently located in a Philadelphia CCM and has a projected release date of January 29, 2013.  Accordingly, Mr. Gilchrist's claims are rendered moot by based on his RRC placement.

**IV.     Conclusion**

For the foregoing reasons, there is no case or controversy for this Court to consider, and the petition for writ of habeas corpus (Doc. 1) must be dismissed as moot.  An appropriate order follows.

**/s/ A. Richard Caputo**
**A. RICHARD CAPUTO**
**United States District Judge**

**Date:  December 7, 2012**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDMUND GILCHRIST, | : |
| | : |
| Petitioner | : |
| | :  CIVIL NO. 3:CV-11-1502 |
| v. | : |
| | :  (Judge Caputo) |
| DAVID J. EBBERT, | : |
| | : |
| Respondents | : |

**O R D E R**

**AND NOW**, this **7th** day of **DECEMBER, 2012**, for the reasons discussed in the accompanying Memorandum, it is ordered that:

    1. Mr. Gilchrist's 28 U.S.C. § 2241 habeas petition (Doc. 1) is dismissed as moot.

    2. The Clerk of Court is directed to close this case.

                              /s/ A. Richard Caputo
                              **A. RICHARD CAPUTO
                              United States District Judge**